IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAHEEM WAY,

        Plaintiff,

v.                                                                    1:23-cv-00223-WJ-JMR

TIMOTHY HATCH, *Warden of the Santa Fe Prison Facility;* JOHN OR JANE DOE, *the Office of NMCD PREA Coordinator*; RONALD MARTINEZ, *Office of Warden of Southern New Mexico Correctional Facility*; OLIVIA SANCHEZ; WILLIE FLORES, *Unit Manager of Southern New Mexico Correction Facility*; RACHEL MUNOZ, *Office of PREA Coordinator*; and THERESA SILVA,

        Defendants.[1]

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on defendants' Motion to Dismiss Amended Complaint. Doc. 44. Mr. Way, proceeding *pro se*, filed a response. Doc. 52. The defendants filed a reply. Doc. 58. The Honorable Senior District Judge William P. Johnson referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this case. Doc. 27. Having review defendants' motion, plaintiff's amended complaint, and the

---

[1] The case caption on the Amended Complaint lists the defendants as: "State of New Mexico, New Mexico Probation and Parole, et., al. [sic]" Doc. 23 at 1. However, the body of the complaint makes no claims against the State of New Mexico or New Mexico Probation and Parole.

"[I]n a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are." *Trackwell v. U.S. Government,* 472 F.3d 1242, 1243–44 (10th Cir. 2007) (citation omitted). Here, I understand the intended defendants to be those listed in the body of plaintiff's Amended Complaint.

relevant law, I recommend the Court GRANT IN PART and DENY IN PART defendants' Motion to Dismiss Amended Complaint (Doc. 44).

**I.    Mr. Way's Claims**

Mr. Way initiated this action on March 15, 2023. Doc. 1. As ordered by the Court, Mr. Way filed a first Amended Complaint on May 28, 2024. Docs. 16, 23. Upon 28 U.S.C. § 1915(e) review, this Court found that the "civil rights claims set forth in the Amended Complaint must be resolved on a full record and after a *Martinez* investigation, if appropriate." Doc. 26 at 2.[2]

    **A.  Factual Basis of the Amended Complaint**

Mr. Way's case arises out of the "almost a year" that he was housed in an "unsupervised cell with another inmate" who repeatedly "beat and raped" him.[3] Doc. 23 at 8–9. Mr. Way explains that this inmate "was found to have committed four other incidents of sexual abuse and assaults on inmates." *Id.* at 8. Mr. Way states that he "made many reports and informed correction officers that he was being sexually abused and assaulted, and that he would get beat up if he said anything[,] possibly killed." *Id.* at 9. Mr. Way also attached a letter to his complaint from the New Mexico Corrections Department's ("NMCD") Agency PREA Coordinator. *Id.* at 29 ("Exhibit PREA-9"); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint

---

[2] The Tenth Circuit "allow[s] a court authorized report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis. These reports are referred to as *Martinez* reports." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

[3] Mr. Way's complaint also contains allegations related to the legality of his criminal sentence, which have already been dismissed. Doc. 26 at 2 ("[T]o the extent the Amended Complaint raises habeas claims, *see* e.g., pages 4-8, these claims are dismissed without prejudice to Way's right to separately file an appropriate habeas petition.").

itself, but also attached exhibits.") (citation omitted). The letter stated that Mr. Way's reported claim of "sexual abuse or sexual harassment has been **substantiated**." *Id.* (emphasis in original). Mr. Way argues that he was subjected to this danger because of a classification error, which resulted in him being inappropriately housed with his attacker.

### B. Legal Basis of the Amended Complaint

While the factual basis of Mr. Way's complaint is clear, the legal basis is not so straightforward. Reading Mr. Way's complaint liberally, I find that he is suing each defendant in both their official and individual capacities pursuant to all four rights of action that he cites: 42 U.S.C. § 1983, the Federal Tort Claims Act, the New Mexico Tort Claims Act, and the New Mexico Civil Rights Act.

On a motion to dismiss, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). As such, I do not fault Mr. Way for his failures to precisely outline the corresponding legal authority for each of his claims.

Mr. Way cites four possible rights of action in his complaint: 42 U.S.C. § 1983, the Federal Tort Claims Act, the New Mexico Tort Claims Act, and the New Mexico Civil Rights Act. In the interest of deference to his factually plausible complaint, I presume that Mr. Way intends to make a claim pursuant to all four laws.

Mr. Way names seven defendants: Timothy Hatch, as warden of the Santa Fe Prison Facility; Ronald Martinez, as Warden of the Southern New Mexico Correctional Facility; Olivia

Sanchez, a caseworker at the Southern New Mexico Correctional Facility; Willie Flores, unit manager at Southern New Mexico Correctional Facility; Rachel Munoz, a PREA coordinator; Theresa Silva, also a PREA coordinator; and John or Jane Doe, an unnamed PREA coordinator.[4] Doc. 23 at 2–4.

As required by *Hall*, I read Mr. Way's complaint as suing each defendant in both their official and individual capacities. *See Hall*, 935 F.2d at 1110 (instructing court not to fault a *pro se* plaintiff at the pleading stage for "failure to cite proper legal authority [or] his confusion of various legal theories"). Mr. Way clearly asserts that Mr. Hatch is liable in his "official, individual[,] and personal capacity." Doc. 23 at 2. However, as to the other defendants, Mr. Way is less precise. When listing defendants, the amended complaint states that each defendant was "operat[ing] within his [or her] official capacity." *Id.* at 3–4. Reading the complaint strictly, a court could interpret this phrase as Mr. Way suing each of the remaining defendants only in their official capacities, which may be how the defendants in this case interpreted Mr. Way's complaint. *See* Doc. 43 (motion to dismiss asserting a qualified immunity defense as to defendant Hatch only). However, a more liberal interpretation is that Mr. Way is merely indicating that each defendant was working in the scope of their job duties at the time of the alleged offenses. This latter reading is bolstered by Mr. Way's response to the motion to dismiss where he argues that the defendants were acting in their individual capacities. Doc. 52 at 3. Because I must read the complaint liberally, I presume that Mr. Way intends to sue each

---

[4] Mr. Way also names several defendants who have already been dismissed. *See* Doc. 26 (involuntarily dismissing defendants Michelle Lujan Grisham, Alisha Tafoya Lucero, and Raul Torrez); Doc. 47 (voluntarily dismissing defendants Charles Tully, Anthony Apodaca, and John or Jane Doe of the Office of Probation and Parole).

defendant in both their official capacity and individual capacity.

In sum, I understand Mr. Way to be suing each defendant in both their official capacity and individual capacity pursuant to 42 U.S.C. § 1983, the Federal Tort Claims Act, the New Mexico Tort Claims Act, and the New Mexico Civil Rights Act.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[F]ailure to state a claim upon which relief can be granted," is grounds for the Court to dismiss a complaint. FED. R. CIV. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court assumes "the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

A complaint must also provide "fair notice of the grounds for the claims made against each of the defendants." *Id.* at 1250. "Fair notice under Rule 8(a)(2) depends on the type of case." *Id.* at 1248 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231–232 (3d Cir. 2008). For example, "[a] simple negligence action based on an automobile accident may require

little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Id.* Whereas a more complex case with both governmental and individual defendants might require that the complaint "make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250.

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. Still, the Court may not "assume the role of advocate for the pro se litigant." *Id.*

### III.   Discussion

I recommend that the Court dismiss plaintiff's claims against the defendants in their official capacity under § 1983, the Federal Tort Claims Act, the New Mexico Tort Claims Act, and the New Mexico Civil Rights Act. However, plaintiff's claims against the defendants in their individual capacities under § 1983 should not be dismissed at this stage.

### A. Plaintiff's § 1983 claims against defendants in their official capacities must be dismissed.

Defendants argue that "Plaintiff's § 1983 claim must be dismissed because the Eleventh Amendment bars § 1983 claims against defendants in their official capacities." Doc. 44 at 5–6. I agree.

The Eleventh Amendment of the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. CONST., amend. XI. Courts interpret this text as barring "lawsuits in federal court seeking

damages against states as well as against state agencies, departments, and employees acting in their official capacity." *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990) (citation omitted). Eleventh Amendment immunity may be waived in two ways. "Congress may abrogate a state's Eleventh Amendment immunity. . . . A state may also waive its Eleventh Amendment immunity and consent to be sued." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

When passing § 1983, the United States Congress authorized suit against "[e]very person who," acting under color of state law, deprives another of their constitutional rights. 42 U.S.C. § 1983. The Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Official-capacity lawsuits are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. In contrast, personal-capacity lawsuits, also called individual capacity lawsuits, "seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165.

Here, each defendant is sued in their official capacity. Doc. 23 at 2–4; *see also infra* § III.E (discussing plaintiff's claims against the defendants in their individual capacities). Mr. Way is certainly requesting monetary relief. Doc. 23 at 9 ("Plaintiff request[s] . . . to be compensated awarded damages from every liable defendant in the amount of twenty million dollars . . . ."); *see also Bishop*, 902 F.2d at 810 (Eleventh Amendment bars "lawsuits in federal court seeking damages against states."). Defendants explain that "[e]very Defendant . . . is employed by the NMCD[,] which is considered part of the State of New Mexico." Doc. 44 at 6.

7

As such, when Mr. Way sues Mr. Hatch, Mr. Martinez, Ms. Sanchez, Mr. Flores, Ms. Munoz, Ms. Silva, and John or Jane Doe of the NMCD PREA office in their official capacities, he is suing the State of New Mexico. *See Graham*, 473 U.S. at 166. In which case, Mr. Way's § 1983 claims against them are barred by the Eleventh Amendment. *See Bishop*, 902 F.2d at 810.

Therefore, Mr. Way's § 1983 claims against the defendants in their official capacity must be dismissed.

### B. Plaintiff's claims under the Federal Tort Claims Act must be dismissed.

Defendants argue that plaintiff's claims based in the Federal Tort Claims Act "must be dismissed for failure to state a claim." Doc. 44 at 10; *see also* FED. R. CIV. P. 12(b)(6). I agree.

The Federal Tort Claims Act authorizes a plaintiff to hold the United States liable for a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Federal Tort Claims Act only relates to acts or omissions by federal employees. *See Ohlsen v. United States*, 998 F.3d 1143, 1155 (10th Cir. 2021).

The simplest reason that plaintiff fails to state a claim on which relief can be granted under the Federal Tort Claims Act is that none of the actors in his case are federal employees. *See id.* Instead, the defendants are employed by the State of New Mexico. Therefore, plaintiff's Federal Tort Claims Act claims must be dismissed.[5]

---

[5] Defendants raise several other arguments as to why plaintiff fails to state a Federal Tort Claims Act claim. Doc. 44 at 10. Because my stated reasoning is dispositive, I do not reach defendants' additional arguments.

...

### C. Plaintiff's claims under the New Mexico Tort Claims Act must be dismissed.

Defendants argue that this Court lacks jurisdiction over plaintiff's state tort law claims. Doc. 44 at 11–12; *see also* FED. R. CIV. P. 12(b)(1). I agree.

Claims under the New Mexico Tort Claims Act must first be filed in New Mexico state court. *See* N.M. Stat. § 41-4-18(A) ("Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the district courts of New Mexico."); *see also* N.M. Stat. § 41-4-4(F) ("Nothing in . . . this section shall be construed as . . . a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution."). The Tenth Circuit has held that a plaintiff "cannot pursue his claim [under the New Mexico Tort Claims Act] against the New Mexico Department of Corrections and its employees acting within the scope of their employment in the federal district court, but rather is relegated to the state district court to seek relief." *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990).

Because plaintiff filed his state tort law claims in federal court, as opposed to New Mexico state court, the Court must dismiss plaintiff's claims under the New Mexico Tort Claims Act.

### D. Plaintiff's claim under the New Mexico Civil Rights Act must be dismissed.

Defendants argue that this Court lacks jurisdiction over plaintiff's New Mexico Civil Rights Act claims. Doc. 44 at 13–14. Alternatively, defendants argues that the defendants are not proper parties under the New Mexico Civil Rights Act. *Id.* I agree on both points.

Claims under the New Mexico Civil Rights Act must first be filed in New Mexico state court. As the New Mexico Civil Rights Act was passed relatively recently in 2021, case law is still emerging. However, the first few judges in this district to have broached the question, have

each decided that claims under the New Mexico Civil Rights Act must first be filed in New Mexico state court. *O'Flaherty v. U.S. Marshals Serv.*, No. 1:23-cv-00389-KWR-GJF, 2024 WL 3342520, at *2 (D.N.M. July 9, 2024) ("The New Mexico Civil Rights Act does not waive the State's sovereign immunity for suits brought in federal court.") (Riggs, J.); *Stone v. Board of Cnty. Comm'r for Cnty. Quay*, No. 1:22-cv-00805-MV-JMR, 2024 WL 1933629, at *2 (D.N.M. May 1, 2024) (holding the same) (Vásquez, J.); *Mowrey v. DeLaney*, No. 2:23-cv-00847-KG-DLM, 2023 WL 7077809, at *3 (D.N.M. Oct. 26, 2023) (holding the same) (Martinez, J.). While less explicit than the text of the New Mexico Tort Claims Act, the statutory text of the New Mexico Civil Rights Act does not appear to waive sovereign immunity in federal court. *See* N.M. Stat. § 41-4A-3(B) ("A person who claims to have suffered a deprivation of any rights . . . due to acts or omissions of a public body . . . may maintain an action . . . in any *New Mexico district court*.") (emphasis added); N.M. Stat. § 41-4A-9 ("[T]he waiver of sovereign immunity pursuant to Section 9 of that act shall not abrogate . . . any other constitutional, statutory or common law immunity.").[6] Because the New Mexico Civil Rights Act does not clearly waive sovereign immunity in federal court, I agree with the other judges who have decided this issue. This Court lacks jurisdiction over New Mexico Civil Rights Act claims that did not originate in state court.

Because plaintiff filed his New Mexico Civil Rights Act claims in federal court, as

---

[6] While not dispositive, some legislative history also suggests that New Mexico Civil Rights Act claims must originate in state court. The legislative Fiscal Impact Report for the New Mexico Civil Rights Act describes the act as follows: "The act allows a person who claims a deprivation of any 'rights, privileges or immunities' secured by the bill of rights of the New Mexico Constitution to bring a lawsuit *in state district court* and recover actual damages and injunctive relief." Fiscal Impact Report, NEW MEXICO LEGISLATIVE FINANCE COMMITTEE, https://www.nmlegis.gov/Sessions/21%20Regular/firs/HB0004.PDF (last updated March 12, 2021) (emphasis added).

opposed to New Mexico state court, this Court lacks jurisdiction over the claims.

In addition to the jurisdictional issue, plaintiff may not sue individuals under the New Mexico Civil Rights Act. *See* N.M. Stat. § 41-4A-3(C) ("Claims brought pursuant to the New Mexico Civil Rights Act shall be brought exclusively against a public body."). Instead, plaintiff must sue the relevant "public body." *Id.* A "public body" is "a state or local government, an advisory board, a commission, an agency or an entity created by the constitution of New Mexico or any branch of government that receives public funding." N.M. Stat. § 1-4A-2. As such, this Court must dismiss plaintiff's New Mexico Civil Rights Act claims made against any individuals.

For these reasons, plaintiff fails to state a claim on which relief can be granted under the New Mexico Civil Rights Act.

### E. Plaintiff states a § 1983 claim against the defendants in their individual capacities.

Defendant argues that plaintiff "fails to allege each required element when pursuing a § 1983 claim against each of the Defendants." Doc. 44 at 8. I disagree. Plaintiff states a claim against the defendants in their individual capacities under § 1983 for failure to protect him in violation of his Eighth Amendment rights.

Under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Vicarious liability is not available under § 1983. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Liability, instead, "must be based on personal involvement in the alleged constitutional violation." *Id.* (citation omitted). However, "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on

him." *Id.* (citation omitted). "[A]ny official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable.'" *Id.* (citation omitted).

Importantly, here, *pro se* litigants are not held to the same standard as lawyers. *Hall*, 935 F.2d at 1110. It bears repeating that: "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.*

Pursuant to a prisoner's Eighth Amendment rights, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation and quotation omitted). "A prisoner has a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (citation and quotation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quoting *Farmer*, 511 U.S. at 834) (quotation omitted).

An Eighth Amendment failure to protect claim has two elements. "First, an inmate 'must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "Second, the inmate must establish that the prison official . . . is [or was] deliberately indifferent to the inmate's health or safety." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The officer must have been both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and have, in fact, "draw[n] the inference." *Id.* (quoting *Farmer*, 511 U.S. at 834).

As to the first prong, plaintiff certainly alleges that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* He was allegedly housed for "almost a year" in an "unsupervised cell with another inmate" who repeatedly "beat and raped" him. Doc. 23 at 8–9. "Clearly plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

As to the second prong, plaintiff sufficiently states that each defendant was objectively, "deliberately indifferent" to his "health or safety." *See Riddle*, 83 F.3d at 1204.

First, and most clearly, plaintiff states a claim that defendant Hatch was deliberately indifferent to his safety. Plaintiff alleges that Mr. Hatch was aware of the substantial risk of serious harm, and Mr. Hatch deliberately took no action. Doc. 23 at 8 ("Defendant Warden Timothy Hatch . . . placed Plaintiff, who, is a sex offender in a[n] unsupervised cell with another inmate, who was found to have committed four other incidents of sexual abuse and assaults on inmates."); *Id.* ("Defendant Warden Timothy Hatch . . . reviewed plaintiff's complaints of being sexually abused and assaulted, and did not immediately take any action to move or transfer plaintiff . . . ."); *Id.* at 9 ("Plaintiff informed . . . Defendant Warden Timothy Hatch about the known sexually abusive inmate['s] violent sexual[ly] abusive assaults on plaintiff for almost a year and no action was taken to protect plaintiff's life from the risk of harm and death."). Defendants complain that plaintiff does "not allege any facts as to how Defendant Hatch was involved or responsible for violating Plaintiff's Eighth Amendment protections." Doc. 44 at 8. However, plaintiff does not have to allege that Mr. Hatch "physically plac[ed] hands on him," to hold Mr. Hatch liable. *Dodds*, 614 F.3d at 1195 (citation omitted). It is sufficient that Mr. Hatch

13

was personally aware of the ongoing harm and deliberately did not fulfill his "duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

Next, plaintiff states a claim that the defendants "NMCD PREA officials" were deliberately indifferent to his safety by failing to protect him. Doc. 23 at 9. Defendants acknowledge that these officials are defendants Rachel Munoz and Theresa Silva. Doc. 44 at 9 ("Plaintiff does attempt to identify the PREA officials by listing Rachel Munoz and Theresa Silva as a PREA coordinator."). It follows logically that the defendant John or Jane Doe PREA coordinator is also a "NMCD PREA official," as plaintiff uses the phrase. Plaintiff writes that he "informed . . . the NMCD PREA officials . . . about the known sexually abusive inmate['s] violent sexual[ly] abusive assaults on plaintiff for almost a year and no action was taken to protect plaintiff's life from the risk of harm and death." Doc. 23 at 9. Plaintiff also attached a letter from the NMCD's PREA office explaining that his allegations of "sexual abuse or harassment has been ***substantiated***," adding support to his allegations that the PREA officials were aware of the abuse. Doc. 23 at 29 ("Exhibit PREA-9") (emphasis in original). Defendants argue that this letter "shows that Defendants did not have deliberate indifference to Plaintiff's situation because they were actively investigating the PREA complaint he filed." Doc. 44 at 9. However, this letter does not show any steps that the defendants took to protect plaintiff after the allegations were made. If it is true that prison officials found that plaintiff's ongoing abuse was substantiated, but then "no action was taken to protect plaintiff's life from the risk of harm," plaintiff's claim would only be bolstered. *See* Doc. 23 at 9. As such, plaintiff sufficiently states a claim that Ms. Munoz, Ms. Silva, and the John or Jane Doe PREA coordinator were deliberately indifferent to plaintiff's safety.

Finally, because plaintiff is *pro se* and this case is at the pleading stage, I find that plaintiff states a sufficient claim for relief against the remaining defendants Ronald Martinez, Warden of the Southern New Mexico Correctional Facility; Olivia Sanchez, a caseworker at the Southern New Mexico Correctional Facility; and Willie Flores, unit manager at Southern New Mexico Correctional Facility.[7] Plaintiff states that Mr. Martinez, Ms. Sanchez, and Mr. Flores were each "given notice of [the] PREA investigation." Doc. 23 at 3. He separately explains that he "made many reports and informed correction officers" about his abuse "throughout the year," and "no one listened to plaintiff['s] cry out for help." *Id.* at 9. He adds that his "wife and family contacted the prison to make complaints[,] and nothing happened." *Id.* He also states that his attacker "was found to have committed four other incidents of sexual abuse and assaults on inmates." *Id.* at 8. Allegedly, "when plaintiff would shower his predator would follow, when plaintiff used the phone his predator would stand next to him, plaintiff had to have a third party inmate call his family." *Id.* at 9. Taking these facts together, I can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail," against the remaining defendants. *Hall*, 935 F.2d at 1110. The claims against these defendants should be "resolved on a full record and after a *Martinez* investigation." Doc. 26 at 2 (Johnson, J.). As such, I cannot recommend dismissal against these defendants at the pleading stage.

---

[7] In plaintiff's response, he adds factual allegations regarding his claims against Mr. Martinez, Ms. Sanchez, and Mr. Flores. Doc. 52 at 2. Because these factual allegations are not contained in the complaint, I cannot, and do not, consider them. *Jojola v. Chavez*, 55 F.3d 488, 484 (10th Cir. 1995) ("[I]n determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").

15

Plaintiff sufficiently states a § 1983 claim against the defendants in their individual capacities. Although I find that plaintiff's claims are sufficiently specific to survive the pleading phase, as this litigation continues, he will be required to narrow his claims against each defendant. I anticipate that a *Martinez* report will aid in plaintiff doing so.

### F. Qualified Immunity

Defendants argue that defendant Hatch is entitled to qualified immunity. Doc. 40 at 9. I disagree. Defendants do not argue that any of the other defendants are entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (unpublished) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). However, on a Rule 12(b)(6) motion to dismiss, courts use "a more challenging standard of review than would apply on summary judgment." *Id.* There is a two-prong test to evaluate if a defendant is entitled to qualified immunity. Courts "evaluate '(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

Defendants argue that "Defendant Hatch must have qualified immunity because Plaintiff's Amended Complaint does not provide any facts as to how Defendant Hatch was

Plaintiff sufficiently states a § 1983 claim against the defendants in their individual capacities. Although I find that plaintiff's claims are sufficiently specific to survive the pleading phase, as this litigation continues, he will be required to narrow his claims against each defendant. I anticipate that a *Martinez* report will aid in plaintiff doing so.

### F. Qualified Immunity

Defendants argue that defendant Hatch is entitled to qualified immunity. Doc. 40 at 9. I disagree. Defendants do not argue that any of the other defendants are entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (unpublished) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). However, on a Rule 12(b)(6) motion to dismiss, courts use "a more challenging standard of review than would apply on summary judgment." *Id.* There is a two-prong test to evaluate if a defendant is entitled to qualified immunity. Courts "evaluate '(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

Defendants argue that "Defendant Hatch must have qualified immunity because Plaintiff's Amended Complaint does not provide any facts as to how Defendant Hatch was

individually involved in depriving Plaintiff of his Eighth Amendment protections." Doc. 44 at 9. Essentially, this amounts to an argument that the first prong of the qualified immunity test— "whether the facts that a plaintiff has alleged make out a violation of a constitutional right"—is not satisfied because plaintiff fails to state a claim upon which relief can be granted against defendant Hatch. However, as discussed in section III.E, I find that at this stage plaintiff does state a claim that defendant Hatch violated his Eighth Amendment rights by failing to protect him. Defendants are correct that "prison officials are not expected to 'absolutely guarantee the safety of their prisoners.'" Doc. 44 at 9 (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999), *abrogated in part on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "They are, however, responsible for taking reasonable measures to insure the safety of inmates." *Lopez*, 172 F.3d at 759. Plaintiff claims more than just that he was harmed. Plaintiff claims that Mr. Hatch showed objective deliberate indifference to that harm. *See, e.g.*, Doc. 23 at 9 ("Plaintiff informed . . . Defendant Warden Timothy Hatch about the known sexually abusive inmate['s] violent sexual[ly] abusive assaults on plaintiff for almost a year and no action was taken to protect plaintiff's life from the risk of harm and death."). As such, "the facts that . . . plaintiff has alleged make out a violation of a constitutional right." *Myers*, 773 F. App'x at 1036.

Defendants make no argument as to the second prong of the two-part qualified immunity test. As such, I will not make the argument for them. *See Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589–90 (10th Cir. 2020) (declining to address inadequately raised qualified immunity argument).

Therefore, at the pleading stage, defendant Hatch is not entitled to qualified immunity from plaintiff's claim against him.

**IV.     Recommendation**

I recommend that the Court GRANT IN PART and DENY IN PART defendants' Motion to Dismiss. I recommend the Court grant in part defendants' motion by finding that:

(1) Plaintiff fails to state a § 1983 claim against defendants in their official capacity. *Supra* § III.A.

(2) Plaintiff fails to state a claim pursuant to the Federal Tort Claims Act. *Supra* § III.B.

(3) Plaintiff fails to state a claim pursuant to the New Mexico Tort Claims Act. *Supra* § III.C.

(4) Plaintiff fails to state a claim pursuant to the New Mexico Civil Rights Act. *Supra* § III.D.

I recommend the Court deny in part defendants' motion by finding that:

(1) Plaintiff sufficiently states a failure to protect claim against each defendant in their individual capacities under § 1983. *Supra* § III.E.

(2) Defendant Hatch is not entitled to qualified immunity at the pleading stage. *Supra* § III.F.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge